## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DOUG LARR and KAELIN CRAWFORD, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC., a New Jersey Corporation, d/b/a AUDI OF AMERICA, INC., VOLKSWAGEN AG, a German Corporation, and AUDI AG, a German Corporation,<br><br>Defendants. | Case No. 26-5678<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Doug Larr and Kaelin Crawford (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, bring this Class Action Complaint against Volkswagen Group of America, Inc. ("VWGoA"), Audi of America, Inc. ("Audi of America"), Volkswagen AG ("VWAG"), and Audi AG (collectively, "VW" or "Defendants"). Plaintiffs allege the following based on (a) personal knowledge, (b) the investigation of counsel, and (c) information and belief:

### INTRODUCTION

1.      This consumer class action arises from a latent defect found in the model year ("MY") 2018-2024 Audi A4, A5, S5 Cabriolet, S5 Sportback, RS 5 and SQ5 vehicles; MY 2019-2024 A6, A7, A8, and Q8 vehicles; MY 2019 and 2021-2024 RS 5 Sportback vehicles; MY 2020-2024 A6 Allroad, S6, S7 and Q7 vehicles; MY 2020-2021 A8 e quattro vehicles; and MY 2021-2024 SQ5 Sportback vehicles  that are equipped with the 2.9T and 3.0T EA839 engines (hereafter,

1

the "Class Vehicles").[1]

2.      This action arises from Defendants' failure, despite their longstanding knowledge since at least 2018, to disclose to Plaintiffs and other consumers that the Class Vehicles contain a defectively designed and/or manufactured water pump ("Water Pump") that causes it to prematurely fail ("Water Pump Defect" or "Defect"). When the Defect manifests, it leaks coolant internally and can cause catastrophic damage to the engine.  Unlike ordinary external coolant leaks that are visible to drivers and technicians, the Defect permits coolant to migrate internally through the vacuum system, often without immediately observable external leakage, thereby concealing the severity of the condition until substantial damage has already occurred.

3.      Not only did Defendants actively conceal the fact that the Class Vehicles were prone to the Defect, which can cause extensive damage to the engine (and require costly repairs to fix), but they also did not reveal that the existence of this Defect would diminish the intrinsic and resale value of the Class Vehicles.

4.      Defendants have long been aware of the Defect. Despite their longstanding knowledge, Defendants have been unable or unwilling to adequately repair the Class Vehicles when the Defect manifests.

5.      Many owners and lessees of the Class Vehicles have communicated with Defendants and their agents to request that they remedy and/or address the Defect at Defendants' expense. Defendants have failed and/or refused to do so, often conveying to owners and lessees that the Class Vehicles are operating as intended and therefore cannot be repaired under warranty or otherwise. Once the Class Vehicles fall outside the warranty period, Defendants then charge the

---

[1] Plaintiffs reserve the right to amend the definition of the Class Vehicles after conducting discovery.

owners and lessees for the costly repairs necessitated by the Defect.

6. Defendants have also refused to take any action to correct this concealed defect when it manifests outside of the warranty period. Because the defect can manifest shortly outside of the warranty period for the Class Vehicles—and given Defendants' knowledge of this concealed, safety-related defect—Defendants' attempt to limit the warranty with respect to the engine defect is unconscionable and unenforceable here.

7. As a result of Defendants' unfair, deceptive, and/or fraudulent business practices, owners and/or lessees of the Class Vehicles, including Plaintiffs, have suffered an ascertainable loss of money and/or property and/or loss in value. The unfair and deceptive trade practices committed by Defendants were conducted in a manner giving rise to substantial aggravating circumstances.

8. Despite notice and knowledge of the defect from the numerous complaints they have received, information received from dealers, National Highway Traffic Safety Administration ("NHTSA") complaints, and their own internal records, including pre-sale durability testing, Defendants have not recalled and/or offered an adequate repair to the Class Vehicles, offered their customers suitable repairs or replacements free of charge, or offered to reimburse their customers who have incurred out-of-pocket expenses to repair the Defect.

9. Had Plaintiffs and other Class Members known of the Defect at the time of purchase or lease, they would not have bought or leased the Class Vehicles, or would have paid substantially less for them.

10. Plaintiffs are also informed and believe, and on that basis allege, that as the number of complaints increased, and Class Members grew dissatisfied with the performance of the Class Vehicles, Defendants were forced to acknowledge that the Class Vehicles suffer from an inherent

3

defect.

11.     As a result of the Defect and the monetary costs associated with attempting to repair the Defect, Plaintiffs and the Class Members have suffered injury in fact, incurred damages, and have otherwise been harmed by Defendants' conduct.

12.     This case seeks protection and relief for owners and lessees of the Class Vehicles for the harm they have suffered, and the safety risks they face, from Defendants' breaches of express and implied warranties and Defendants' unfair, unlawful, and deceptive trade practices.

## **JURISDICTION AND VENUE**

13.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

14.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants transact business in this district, are subject to personal jurisdiction in this district, and therefore are deemed to be citizens of this district. Additionally, a substantial part of the events or omissions giving rise to the claim occurred in this district, Defendants have advertised in this district, and Defendants have received substantial revenue and profits from its sales and/or leasing of Class Vehicles in this district.

15.     This Court has personal jurisdiction over Defendants because they have conducted substantial business in this judicial district, and intentionally and purposefully placed Class Vehicles into the stream of commerce within the state of New Jersey and throughout the United

4

States.

**THE PARTIES**

**Plaintiff Doug Larr**

16.    Plaintiff Doug Larr is a citizen of California who currently resides in Irvine, California, and has at all times pertinent to this Complaint.

17.    Plaintiff purchased a certified pre-owned 2019 Audi A6 on or about August 8, 2021, from Audi South Coast, an authorized Audi dealership located in Santa Ana, California.

18.    Plaintiff purchased (and still owns) this vehicle, which is used for personal and/or household use. His vehicle bears Vehicle Identification Number: WAUL2AF23KN103969.

19.    Prior to purchase, Plaintiff discussed the features of the vehicle with Defendants' sales representatives at Audi South Coast and reviewed the vehicle's window sticker. None of these sources disclosed the Defect to Plaintiff.

20.    On or about March 20, 2026, when Plaintiff's vehicle had approximately 33,500 miles on the odometer, Plaintiff brought his vehicle into a local independent mechanic shop for a routine oil change.

21.    The mechanic informed Plaintiff that the water pump was leaking, causing coolant to migrate through the vacuum hose system. The water pump, PCV valve, and vacuum hose system all needed to be replaced.

22.    Plaintiff initially contacted Audi South Coast and requested the dealership cover the necessary repairs, since water pump failure is a known issue with these vehicles. The dealership declined and informed Plaintiff he would be charged for any repairs.

23.    Plaintiff paid approximately $5,984 to the independent mechanic to replace the water pump, PCV valve, and the vacuum hose system in his vehicle.

24.    Plaintiff has suffered an ascertainable loss as a result of Defendants' omissions

associated with the Defect, including, but not limited to, out of pocket loss associated with the Defect and diminished value of his vehicle.

25.    Neither Defendants, nor any of their agents, dealers, or other representatives informed Plaintiff of the existence of the Water Pump Defect prior to purchase. Had Defendants disclosed the Defect to Plaintiff, Plaintiff would not have purchased his vehicle, or would have paid less for it.

26.    Plaintiff Larr provided Defendants with notice of his claims by letter on May 14, 2026.

**Plaintiff Kaelin Crawford**

27.    Plaintiff Kaelin Crawford is a citizen of New Jersey who currently resides in Woodbury, New Jersey and has at all times pertinent to this Complaint.

28.    Plaintiff purchased a 2021 Audi SQ5 new in April 2021 from Audi Turnersville, an authorized Audi dealership located in Blackwood, New Jersey.

29.    Plaintiff purchased (and still owns) this vehicle, which is used for personal and/or household use. His vehicle bears Vehicle Identification Number: WA1B4AFY0M2016025.

30.    Prior to purchase, Plaintiff discussed the features of the vehicle with Defendants' sales representatives at Audi Turnersville and reviewed the vehicle's window sticker. None of these sources disclosed the Defect to Plaintiff.

31.    In June 2024, when Plaintiff's vehicle had approximately 62,000 miles on the odometer, Plaintiff got a low coolant warning on his dashboard.

32.    Plaintiff took his vehicle to an independent mechanic that specializes in German vehicles. The mechanic told Plaintiff that the water pump was leaking around the PCV valve.

33.    Plaintiff took his vehicle to Audi Turnersville, where he was told that it would cost

him approximately $2800 to fix the leak.

34.     Plaintiff contacted Audi NA and requested that they cover the cost of the repairs. Audi declined and informed Plaintiff he was outside the warranty and would be charged for any repairs.

35.     Plaintiff took his vehicle back to the independent mechanic, who charged him $1460.77 to remove and replace the faulty pump.

36.     Plaintiff has suffered an ascertainable loss as a result of Defendants' omissions associated with the Defect, including, but not limited to, out of pocket loss associated with the Defect and diminished value of his vehicle.

37.     Neither Defendants, nor any of their agents, dealers, or other representatives informed Plaintiff of the existence of the Water Pump Defect prior to purchase. Had Defendants disclosed the Defect to Plaintiff, Plaintiff would not have purchased his vehicle, or would have paid less for it.

38.     Plaintiff Crawford provided Defendants with notice of his claims by letter on May 14, 2026.

**<u>Defendants</u>**

39.     Defendant VWGoA is an entity incorporated in New Jersey with its principal place of business and headquarters at 2200 Ferdinand Porsche Drive, Herndon, Virginia 20171. At this facility, VWGoA coordinates the United States operations and activities of the Volkswagen, Audi, Bentley, Bugatti, and Lamborghini brands, as well as the activities of its 8,000 employees and its subsidiary, VW Credit, Inc. One of VWGoA's fictitious names is Audi of America, Inc., a New Jersey corporation that VWGoA has registered with the Virginia Secretary of State.

40.     Defendant VWGoA, through its various entities, markets, distributes, warranties,

and sells Audi-branded automobiles and parts for those automobiles, including the Class Vehicles, in multiple locations across the United States, including California and New Jersey.

41.    In order to sell vehicles to the general public, VWGoA enters into agreements with authorized dealerships who engage in retail sales with consumers such as Plaintiffs. In return for the exclusive right to sell new Audi-branded vehicles, authorized dealerships are also permitted to service and repair these vehicles under the warranties VWGoA provides directly to consumers who purchased new vehicles from the authorized dealerships. All service and repair at an authorized dealership are completed according to VWGoA, Audi AG, and VWAG instructions, issued through service manuals, technical service bulletins ("TSBs"), technical tips ("TT"), and other documents. Per the agreements between VWGoA and the authorized dealers, consumers such as Plaintiffs are able to receive services under VWGoA's issued warranty at dealer locations that are convenient to them. These agreements provide VWGoA with a significant amount of control over the actions of the authorized dealerships, of which there are nearly 1,000 in the United States.

42.    VWGoA, in conjunction with VWAG and Audi AG, drafted the warranties it provides directly to consumers such as Plaintiffs. These warranties are provided on a take-it-or-leave it basis and give VWGoA the sole power in determining whether a repair is coverable by the warranty. VWGoA designates its authorized dealerships as its agents to perform warranty repairs.

43.    VWGoA also developed and disseminated the owner's manual and warranty booklets, advertisements, and other promotional materials relating to the Class Vehicles. VWGoA also is responsible for the content of the Monroney Stickers on Audi-branded vehicles.

44.    Defendant Volkswagen AG is an entity incorporated in and registered to do business in Germany with its principal place of business at Berliner Ring 2, 38440, Wolfsburg,

Germany. This facility also encompasses a 70 million sq. ft. manufacturing facility, the Wolfsburg Volkswagen Plant, where over 800,000 vehicles are produced each year. The Wolfsburg headquarters also have individual production facilities, specialty production plants, warehouses, and administration buildings, with over 20,000 employees. VWAG designs, engineers, manufactures, tests, markets, supplies, sells and distributes Volkswagen, Skoda, and Audi branded vehicles and parts for those vehicles worldwide, including in the United States.

45.    VWAG is the parent corporation of VWGoA and Audi AG, which are each wholly owned subsidiaries. VWAG is also the parent corporation of the United States manufacturing facilities for Volkswagen and Audi-branded vehicles. For all its United States subsidiaries, including VWGoA, VWAG and/or Audi AG, VWAG provides all the technical information for the purpose of manufacturing, servicing, and repairing the Class Vehicles. VWAG selected New Jersey for the original site of VWGoA's headquarters and chose to have VWGoA incorporated as a New Jersey entity. Each year since 2016, VWAG has reported over 35 billion euros (or over 41 billion in U.S. dollars) of revenue from its North American activities via VWGoA and its network of authorized dealerships.

46.    Defendant Audi AG is an entity incorporated and registered in Germany with its principal place of business at Auto-Union-Str. 2 D-85045, Ingolstadt, Germany. The Ingolstadt facility encompasses both corporate offices, which coordinate and supervise its worldwide operations, and a factory totaling over 30 million sq. ft., which produces over 300,000 vehicles a year. As of the end of 2020, over 43,000 employees worked at this facility. Audi AG designs, engineers, manufactures, tests, markets, supplies, sells and distributes Audi branded vehicles and parts for those vehicles worldwide, including in the United States.

47.    The relationship between VWAG and VWGoA is governed by a General

Distributor Agreement that gives Audi AG and/or VWAG the right to control nearly every aspect of VWGoA's operations related to Audi branded vehicles—including sales, marketing, management policies, information governance policies, pricing, and warranty terms.

48.     For all VWAG United States subsidiaries, including VWGoA, VWAG and/or Audi AG, VWAG provides all the technical information for the purpose of servicing and repairing the Class Vehicles, as well as the information needed to draft the owners' manuals.

49.     At all relevant times, VW was and is engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and/or selling automobiles and motor vehicle components in New Jersey and throughout the United States of America.

## TOLLING OF STATUTES OF LIMITATION

50.     Any applicable statute(s) of limitations has been tolled by Defendants' knowing and active concealment and denial of the facts alleged herein. Plaintiffs and members of the Class could not have reasonably discovered the true, latent nature of the Defect until shortly before this class action litigation was commenced.

51.     Defendants were and remain under a continuing duty to disclose to Plaintiffs and members of the Class the true character, quality, and nature of the Class Vehicles, that the Defect is a safety related defect, and that it diminishes the resale value of the Class Vehicles. As a result of the active concealment by Defendants, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## FACTUAL ALLEGATIONS

### A. The Water Pump Defect in the Class Vehicles

52.     The Class Vehicles utilize an integrated coolant module, consisting of a water pump, thermostat housing, and coolant control valve, designed to regulate coolant flow through

10

the engine. This module is constructed with internal seals and composite materials and is located within the engine's "hot V" configuration.

53.    During engine warm-up, the system is designed to restrict or modulate coolant flow so that the engine can reach optimal operating temperature more quickly. Once operating temperature is achieved, the system allows coolant to circulate through the engine to dissipate heat and prevent overheating.

54.    When the Defect manifests, coolant leaks internally within the water pump assembly and related components, including around internal seals and control mechanisms. Rather than exiting the system as an external leak, coolant is permitted to migrate into areas of the engine where it should not be present, including critical internal engine components.

55.    The coolant module is defectively designed and/or manufactured such that its seals, composite housing, and internal control components prematurely degrade under normal operating temperatures and repeated thermal cycling within the engine's 'hot V' configuration. As these components degrade, coolant escapes internally into the vacuum system and other engine components where coolant should never be present, causing loss of coolant, vacuum-system contamination, drivability issues, turbo underboost conditions, overheating, and potentially catastrophic engine failure.

**Defendants' Knowledge of the Water Pump Defect**

56.    Upon information and belief, Defendants regularly monitor the NHTSA databases as part of their ongoing obligation to identify potential defects in its vehicles. Examples of the complaints about Class Vehicles can be found below. NHTSA complaints establish that Defendants knew, or should have known, of the Defect *at least* as early as November 2, 2018, based on publicly available information through (1) Defendants' own records of customers'

11

complaints, (2) dealership repair records, (3) records from NHTSA, (4) warranty and post-warranty claims, (5) pre-sale durability testing and part sales, and (6) previous lawsuits.

57.     Defendants tout their quality efforts to investors:

Every day, we actively assume and exercise responsibility in relation to the environment, safety and society, and we wish to be a role model in these areas. Integrity, reliability, quality and passion thus form the basis for our work. In this way, we will aim for technological leadership in the industry, ensure our competitive profitability and remain an excellent, reliable and secure employer at the same time.[2]

58.     Defendants further tell investors about their Together 2025+ Strategy as part of their quality control efforts:

Delivering outstanding quality and reliable mobility to customers worldwide is the strategic objective of the Quality Assurance department. As the "voice of the customer" the principle of dual control is relied on in critical company processes; products that are superior to those of the competition are developed within budget requirements. The department's commitment to quality runs the gamut of current and future mobility solutions – vehicles as well as services. Last but not least, all markets will pay close attention to differing regional needs to make a substantial contribution to the Volkswagen Group's sustainable growth.[3]

59.     Through their quality control measures, Defendants knew or should have known of the Water Pump Defect.

60.     Defendants also issued at least 3 Technical Service Bulletins ("TSB") related to the Defect.

61.     The first TSB, published on March 18, 2020, informs dealerships of "a possible malfunction of the mechanical coolant pump." The TSB is attached hereto as **Exhibit A.**

62.     The second TSB, published May 17, 2023, states that customers have complained of "coolant loss/leak" and informs dealerships that "the coolant pump is suspected to be the source

---

[2] https://annualreport2018.volkswagenag.com/servicepages/downloads/files/entire_vw_ar18.pdf (last visited May 18, 2026).
[3] https://www.volkswagenag.com/en/group/strategy.html  (last visited May 18, 2026).

of the leak." The TSB is attached hereto as **Exhibit B.**

63.    The third TSB, published December 1, 2025, informs dealerships that a "leak in the coolant pump could contaminate other components of the vacuum system with coolant." The TSB is attached hereto as **Exhibit C.**

### B. Complaints by Other Class Members

64.    Plaintiffs' experiences are by no means isolated or outlying occurrences. Indeed, the internet is replete with examples of blogs and other websites where consumers have complained of the exact same Water Pump Defect in the Class Vehicles.

65.    The Office of Defects Investigation within NHTSA conducts defect investigations and administers safety recalls to support NHTSA's mission to improve safety on the Nation's highways.[4] All vehicle manufacturers, including Defendants, are legally obligated to routinely monitor and analyze NHTSA complaints in order to determine whether vehicles or automotive components should be recalled due to safety concerns, and Defendants thus had knowledge of any and all NHTSA complaints.  *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000).

66.    The following is just a small sampling of the many complaints submitted to NHTSA by Class Vehicle owners. These publicly-available complaints evidence Defendants' prior knowledge of the Water Pump Defect, the negative experiences encountered by Class Members, and the financial burden this places on them.[5]

> **NHTSA ID Number**: 11452846
> **Complaint Date**: February 18, 2022
> **Incident Date**: February 18, 2022
> **Summary of Complaint**

---

[4] *See* NHTSA – MOTOR VEHICLE DEFECTS AND SAFETY RECALLS: WHAT EVERY VEHICLE OWNER SHOULD KNOW, https://www-odi.nhtsa.dot.gov/recalls/recallprocess.cfm. (last visited May 18, 2026), Vehicle manufacturers are required by law to report any potential safety defects to the United States government.

[5] The complaints are reproduced verbatim. Any errors are attributable to the original authors.

I received a message on my dashboard to turn the engine off and check the coolant when starting the vehicle each morning for the last two days. I brought the car into the Audi Dealership in Paramus/Fair Lawn, NJ. They stated the water pump was not working. I researched and found that a recall for ALL ROAD station wagons (Audi) had occurred for 2013-2017 for water pumps that could start a fire in the car. My car, although a 2018 model, was manufactured in January 19, 2018 (the beginning of 2018; recall noted for 2017)- water pump is defective with only 56,000 miles on it. My car was manufactured with defective water pump from prior year...... They paid for water pump part but made me pay for labor to put a replacement part in the car. AUDI should be liable for this..... there should be a recall in my year car because of the potential for fire with a defective water pump.

**NHTSA ID Number:** 11467989
**Complaint Date:** June 7, 2022
**Incident Date:** June 3, 2022
**Summary of Complaint**
Large coolant leak due to faulty plastic thermostat and water pump which can cause overheating, catastrophic engine failure, and fire, putting consumers at risk. The thermostat housing has been replaced by the dealership, but not the water pump, just the water pump seal. There were no warnings prior to the failure, and was only diagnosed after a visual inspection under the vehicle.

**NHTSA ID Number:** 11489365
**Complaint Date:** October 15, 2022
**Incident Date:** September 30, 2022
**Summary of Complaint**
Water Pump prematurely failed. Upon self inspection, I noticed the coolant reservoir was below the minimum requirements. I asked the dealer to inspect, and they determined the cause was a faulty water pump. At around 50,000 miles, this water pump should not have failed under normal use. I am fortunate I self inspected, as continued use may cause premature engine failure due to overheating. Overheating would cause spontaneous vehicle operation failure during normal driving conditions, stalling the vehicle on a road or highway, putting myself and others at risk for impact.

**NHTSA ID Number:** 11550858
**Complaint Date:** October 19, 2023
**Incident Date:** May 19, 2023
**Summary of Complaint**
May 19th water pump cooling system pump my wife driving right on a highway on a left lane car start streaming and engines suddenly shut off thank God she make it to the left on hwy we throw the car to dealer they says engine went because of water went to engine and after that I have a big issue with the dealers and everything even my insurance pay for the new engine and everything and this is the issue a woman driving this car this is so much risk audi not doing anything about it

**NHTSA ID Number:** 11609166

14

**Complaint Date:** August 17, 2024
**Incident Date:** August 13, 2024
**Summary of Complaint**
The car was purchased in 2019, brand new from Audi dealership. Last service showed a serious issue: REPLACE WATER PUMP VACUUM LINES WITH SOLENOIDS AND VACUUM RESERVOIR. Dealership claims out of warranty and wants to charge $5000. VW settled class action lawsuit with consumers due to faulty water pump, and there is a Technical service bulletin dated 11/21/2023 that states the water pump leaks coolant and needs to be repaired. Consumer should have been made aware that vehicle was at risk of faulty water pump that could have been replaced at time of bulletin issue because it would have been under the 4 year mark.

**NHTSA ID Number:** 11613821
**Complaint Date:** September 10, 2024
**Incident Date:** June 5, 2024
**Summary of Complaint**
2019 Audi A7: Water Pump failed. Audi Dealership diagnosed and replaced the Water Pump. Car overheated - warning light came on - and I drove it to the nearest Audi Dealership. I was on a road trip and 800 miles from home when water pump failed. Repairs cost $1950 and took 5 days to complete costing another $1000 in hotel and food expenses plus ruined the road trip.

**NHTSA ID Number:** 11643976
**Complaint Date:** February 20, 2025
**Incident Date:** October 18, 2024
**Summary of Complaint**
- The water pump failed, leading to a coolant leak and potential engine overheating. The failed component is not available for inspection, as it was replaced by an independent repair shop after the dealership quoted an excessive price and could not complete the repair in a timely manner. - A failing water pump can cause engine overheating, sudden power loss, or complete engine failure while driving, which increases the risk of an accident. Additionally, I noticed the smell of coolant inside the cabin, which could indicate a leak that might pose a fire hazard or expose occupants to coolant fumes. - Yes, the issue was diagnosed by an Audi dealership (Audi Northlake), which confirmed that the water pump had failed and needed replacement. Due to their high repair quote and scheduling delays, I had the repair completed at an independent service center, which also confirmed the failure and replaced the water pump. - The issue was confirmed by an Audi dealership but was not formally inspected by Audi corporate, law enforcement, or an insurance company. - Yes, I noticed a coolant smell inside the cabin for a few days before taking it to the dealership. However, there were no warning lights or messages on the dashboard before the failure was diagnosed.

**NHTSA ID Number:** 11662231
**Complaint Date:** May 20, 2025
**Incident Date:** May 2, 2025

**Summary of Complaint**

The vehicle is a 2020 model with less than 55k miles and experienced coolant leaks. Specifically, the water pump was faulty and leaked causing coolant liquid to leak in additional lines and gaskets. The repairs resulted into costs upwards of $5k. When I first brought into dealer, the service rep mentioned that the fluctuating coolant lines wouldn't be an issue but I further pressed them on doing a pressure test to which the issue was discovered. This is a huge safety problem if my engine was to overheat or face and other issues on the leak. I've never heard of a water pump going bad so quickly.

**NHTSA ID Number:** 11603739
**Complaint Date:** July 22, 2024
**Incident Date:** July 20, 2024
**Summary of Complaint**

Water pump started leaking at 55K miles resulting in low coolant level. Vehicle was inspected by the dealer and confirmed that replacement is required.

**NHTSA ID Number:** 11625504
**Complaint Date:** November 15, 2024
**Incident Date:** November 4, 2024
**Summary of Complaint**

Driving on highway at 70 mph and high engine temp light came on. Said to pull over and continue to run car until temp decreased. I got over as quickly as I could ( no more than 1/4 of a mile) and sat on side of PA turnpike as engine cooled. I was at bottom of an exit ramp. I slowly proceeded up the ramp and warning came on again and red temp light reached again. I pulled right into the gas station at top of TP exit ramp. It still said to continue to run the car. I sat with my son in the car and ran the car in the shade. The temp was decreasing and then all my electrical lights came on, yellow battery warning light on and then suddenly the red battery light and all systems failed. Car turned off. Called AAA to take to my mechanic as Audi was a 3 hour wait for a tow and 3 weeks for service appointment with no loaners available. My certified mechanic said water pump completely dislodged. He replaced water pump, thermostat (which was already replaced bc it failed in year 2 of ownership). After repair, 48 volt battery would not take a charge. Assumed faulty alternator and/or battery. Alternator was already replaced once at year 1 as car died while driving as well. We had car towed to audi and they are reporting known issues with water pump but not issuing recalls. Also known issues with alternator repair parts that were used in year 1 but no warning to consumers. They are diagnosing problem now and if alternator and subsequent battery issue, it will be covered but not if battery issue comes back as electrical in nature.

**NHTSA ID Number:** 11662153
**Complaint Date:** May 20, 2025
**Incident Date:** May 9, 2025
**Summary of Complaint**

16

I urgently request a NHTSA investigation into systemic coolant leaks, a dangerous safety defect in Audi vehicles with the 3.0L turbocharged V6 (EA839) engine. Affected models include the Q7 (my 2020 Q7 55 TFSI, VIN: [XXX] ), S4, S5, SQ5, A6/A7, Q8. These defects risk engine damage, sudden power loss, and catastrophic engine failure, endangering all road users. Many owners report premature failures of cooling components (water pump, thermostat, PCV system). Failures often occur post-warranty, costing owners over $3,000 for repairs. Online forums (AudiWorld, Audizine, Reddit) document these widespread defects. The class action [XXX] et al. v. Volkswagen Group of America, Inc. alleges water pump defects in EA839-equipped Audis (incl. Q7 up to 2022). Critical Safety Concerns: The primary safety risk from these coolant leaks involves: Coolant Ingestion: Coolant enters vacuum lines, mixes with oil (faulty PCV), or enters intake (failing intercoolers). Engine Malfunction: Ingestion causes misfires, drivability issues, and sudden power loss during operation. Catastrophic Engine Failure: Severe coolant ingestion can cause catastrophic engine failure, risking loss of control and collisions if the engine seizes/fails at speed. Sudden engine malfunction/failure while driving due to this systemic defect warrants immediate NHTSA investigation. Audi of America is aware. My contact (Mike, Ext. 43252) confirmed Audi is not addressing this widespread failure. Audi's inaction necessitates NHTSA intervention for consumer and road safety. Affected owners urge NHTSA to: Initiate a formal investigation into systemic coolant leak issues and component failures in EA839-equipped Audi vehicles. Assess the safety risks, including potential engine failure and loss of vehicle control. If warranted, issue a safety recall for affected vehicles to prevent accidents and injuries. Public safety is paramount. Evidence indicates a defect compromising vehicle safety and reliability. INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6)

**NHTSA ID Number:** 11663107
**Complaint Date:** May 27, 2025
**Incident Date:** May 20, 2025
**Summary of Complaint**
I am reporting a severe defect in my 2020 Audi Q7 involving "coolant migration" due to a faulty water pump, a known issue in Audi models (Q7, S4, A6, 2013–2022). This poses critical safety risks due to sudden failure with minimal warning. My out-of-warranty Q7 showed minor coolant fouling near a solenoid, with normal coolant levels and no fluid added. The dealer quoted ~$6,000 to replace the water pump and vacuum system. This defect is highly dangerous due to: Sudden Power Loss: Coolant in the vacuum system impairs solenoids and lines, disrupting engine/turbo function. This can cause abrupt power loss, risking loss of control in traffic or at high speeds, potentially leading to collisions. Catastrophic Overheating: A failing water pump may halt coolant circulation, causing rapid engine overheating without warning, risking sudden engine shutdown and stranding drivers in hazardous conditions like highways. Brake Assist Failure: The vacuum system powers the brake booster. Contamination can reduce braking effectiveness, increasing pedal effort and stopping distances, heightening collision risks in emergencies. Emissions Control Issues: Coolant fouling affects PCV and EVAP systems, causing misfires, stalling, or increased emissions,

17

potentially triggering check engine lights and compromising engine stability. Undetectable Progression: The defect often shows no clear symptoms or warnings until severe damage occurs. My vehicle had only minor fouling that could only be detected by visual inspection, yet extensive repairs were needed, indicating the issue's stealthy nature, which prevents timely driver intervention. Systemic Issue: Forums and a class-action lawsuit confirm this defect across Audi models, yet owners face high repair costs post-warranty. This defect endangers drivers and others by risking vehicle failure, impaired braking, and unstable performance. I urge NHTSA to investigate and mandate a recall or extended warranty.

**NHTSA ID Number:** 11670473
**Complaint Date:** July 1, 2025
**Incident Date:** June 19, 2025
**Summary of Complaint**
I'm having to replace my REPLACE WATER PUMP AND VACUUM LINES WITH RESERVOIR at 41k miles or it risk overheating the engine. It is a significant repair at a premature time. After researching, it has been reported there are historical issues with this and faulty parts.

**NHTSA ID Number:** 11678890
**Complaint Date:** August 6, 2025
**Incident Date:** August 6, 2025
**Summary of Complaint**
Component/System: Engine and Cooling — Water Pump / Coolant System Vehicle: 2021 Audi SQ5 Engine Code: CWGD Mileage at Failure: 71,000 Date of Incident: 8/6/2025 Audi Denver I'm reporting a known defect affecting my 2021 Audi SQ5 with engine code CWGD. The engine experienced an internal coolant leak from the water pump housing, which is a known issue previously acknowledged by Audi in TSB #19Q5 2022 01, covering earlier 3.0T engines (DEWA/DEWC). Although my engine (CWGD) is not listed in the bulletin, the failure is identical in nature: the plastic thermostat/water pump housing fails internally, leading to coolant loss and potential engine overheating. This issue is widespread among Audi 3.0T engines, including CWGD, and poses a risk of engine failure and overheating. Audi has extended the warranty for earlier engine variants but refuses to cover mine, even though the defect and consequences are the same. This inconsistent coverage leaves owners like me exposed to high repair costs for a clearly known design flaw. I am requesting that NHTSA investigate whether Audi's CWGD engines should also fall under the scope of the extended warranty or safety defect coverage already applied to DEWA/DEWC engine variants. Audi's selective VIN or engine code exclusions appear arbitrary and may allow known safety-related failures to go unaddressed. Documentation available: dealer inspection report confirming internal water pump leak, warranty denial letter, and TSB copy.

**NHTSA ID Number:** 11682050
**Complaint Date:** August 21, 2025
**Incident Date:** August 9, 2025

**Summary of Complaint**
My water pump failed at 49,000 miles. I have been advised by Audi that it is not covered by the extended warranty for some similar cars.

**NHTSA ID Number:** 11682671
**Complaint Date:** August 24, 2025
**Incident Date:** June 18, 2025
**Consumer Location:** VERGENNES, VT
**Vehicle Identification Number:** WA1BAAFY2M2******
**Summary of Complaint**
There was a lawsuit, see link below, because the water pump on 2021 Audi Q5's fail prematurely. My water pump failed at 66,241 miles and I believe that my 2021 Audi Q5 should've been covered under this water pump failure recall. However, my VIN was not included. Link: [XXX] I would like the recall on the water pump to be extended to my vehicle as it's unreasonable that my water pump failed at 66K. Picture of repair in attachments. INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6)

**NHTSA ID Number:** 11685814
**Complaint Date:** September 8, 2025
**Incident Date:** February 28, 2025
**Summary of Complaint**
The water pump failed on my vehicle. Initially reported 2/2025 at Authorized Audi Service Center. They claimed it was normal for coolant to dip. Audi USA Confirmed I have a settlement class vehicle in 03/2025. Mentioned an 80K Mileage limit. (Car only had 69K miles at the time) When the issue persisted I reached out for repair in accordance to Water Pump Settlement. McKenna Audi Service center initially stated the extended warranty expired 05/2025, and mentioned an 8 Year Limit (8/80K whichever comes first) 9/3 Reached out to Audi USA again and they initially provided an approval. Instructed to take to authorized service center for official diagnosis. 9/5 Audi USA recanted approval 2 days later. Instructed to Call Settlement Administrator. SA stated this is fully Audi responsibly warranty does not expire until 9/2025 unable to assist. Spoke to supervisor at Audi USA who stated extended warranty did not expire until 09/26/2025 09/08 Audi Beverly Hills confirmed water pump malfunction. Sent invoice to supervisor at Audi USA. $2338.25 Supervisor informed me later that warranty is expired after all. Stated a regional manager would look at it but no guarantees. At this point I have spent $350 for a diagnosis I did not need to satisfy the demands of the Audi warranty that is now being denied.

**NHTSA ID Number:** 11687517
**Complaint Date:** September 16, 2025
**Incident Date:** September 10, 2025
**Summary of Complaint**
The contact owns a 2021 Audi SQ5. The contact stated that the vehicle was taken for routine service at the dealer, and the contact was informed that the coolant pump was starting to fail. The contact was advised that the mechanic found coolant running

through the vac lines. The contact was informed that continuing to drive the vehicle with a failing coolant pump could cause engine damage. The contact had the coolant pump replaced. The manufacturer was not informed of the failure. The contact researched online and related the failure to NHTSA Campaign Number: 18V229000 (Engine and Engine Cooling); however, neither the VIN nor the model year was included. The failure mileage was approximately 39,000.

**NHTSA ID Number:** 11689690
**Complaint Date:** September 25, 2025
**Incident Date:** September 1, 2025
**Summary of Complaint**
During a routine service on my 2021 Audi Q7, the shop found the coolant level low and traced it to a leak. The Audi dealer later diagnosed failure of the water pump, thermostat, valves, and related parts, with a repair estimate of nearly $5,000. I discovered that prior model years (up to 2020) were included in a class action lawsuit for the same type of cooling system failures, though my VIN is not covered. This appears to be the same issue, happening just a few months outside of warranty, and raises concerns about premature failure and safety risk from overheating.

**NHTSA ID Number:** 11690455
**Complaint Date:** September 29, 2025
**Incident Date:** September 26, 2025
**Summary of Complaint**
I own a 2018 Audi A5. Many critical cooling system parts — including the thermostat housing, water pump housing, radiator end tanks, breather tubes, and quick-connect hoses — are made of plastic and sit in constant exposure to coolant temperatures over 200°F. Over time, these components become brittle, crack, and fail prematurely. Recently, the plastic breather/return hose between the coolant reservoir and the radiator broke apart during routine service due to brittleness. When these parts fail, coolant leaks quickly, which can cause sudden overheating, engine damage, and potential vehicle disablement while driving. Based on owner reports and my own experience, this appears to be a widespread issue across Audi/VW vehicles of this generation. I request that NHTSA investigate whether the use of plastic in these high-heat, high-pressure components represents a design defect that creates a safety hazard.

**NHTSA ID Number:** 11690639
**Complaint Date:** September 30, 2025
**Incident Date:** September 8, 2025
**Summary of Complaint**
Faulty water pump → allowed coolant to migrate into the vacuum lines (a place coolant should never be). •This led to turbo underboost faults (loss of power) even though the turbo itself is fine. •The contaminated vacuum system now requires replacement of the vacuum shut-off valve and possibly other vacuum components. •Because of how the parts are placed, the repair requires removing the front bumper, and once it's reinstalled, the safety systems/sensors must be recalibrated.

**NHTSA ID Number:** 11693465
**Complaint Date:** October 14, 2025
**Incident Date:** October 1, 2025
**Summary of Complaint**
Water pump failed coolant leaked all over the vehicle five years old and a $7500 repair vacuum seals and most of the engine is damaged from the coolant. I have the video from the dealership but can't upload

**NHTSA ID Number:** 11699105
**Complaint Date:** November 13, 2025
**Incident Date:** August 19, 2025
**Summary of Complaint**
My water pump went out on my 2021Q7. The car had 57271 miles on it. I looked up the Vin and it is not covered in the class action lawsuit however, my model and my year comes up but not my Vin. I feel a water pump should last until 100,000 miles.

**NHTSA ID Number:** 11704951
**Complaint Date:** December 14, 2025
**Incident Date:** December 2, 2025
**Summary of Complaint**
Water pump design failure caused a leak of coolant into vacuum lines preventing coolant from cooling engine and causing immediate overheating. Known issue previous class action lawsuit.

**NHTSA ID Number:** 11705219
**Complaint Date:** December 15, 2025
**Incident Date:** November 5, 2025
**Summary of Complaint**
- Engine water pump failure and coolant intrusion into the vacuum system. Parts were replaced on 5 Nov 2025 and possible still at the dealer's location. - The defect poses the following safety risks: It resulted in contamination of vacuum lines; potential for sudden engine stalling or loss of power while driving; potential for catastrophic damage to engine-management systems dependent on vacuum integrity; potential for damage to emissions and combustion-control systems; potential for reduced braking system performance if vacuum supply is compromised, expensive and unexpected component failures, and possible recurrence since the cause appears related to design rather than normal wear. Any failure can create cascading hazards affecting safety-critical functions. - The problem was confirmed by an authorized Audi dealer. Dealer name and contact info can be provided upon request. - I do not know if the dealer delivered the involved parts to the manufacturer or insurance representative for inspection. Police or others did not inspect it. - There were no warning lights, messages, or other symptoms of the problem prior to the failure. It was identified by the Audi technician on 5 November 2025 while the vehicle was in the dealer for other services. The failure occurred at 47,855 miles which is far below the average lifespan of a water pump or vacuum system.

21

**NHTSA ID Number:** 11714623
**Complaint Date:** January 30, 2026
**Incident Date:** August 11, 2025
**Summary of Complaint**
Audi Q8 failed water pump leading to severe loss of power and a major safety issue. I was merging on a very busy highway when I had loss of power with my children in the vehicle. This was alarming as I was not able to accelerate as anticipated and had no warning/notice that this was going to occur, and others around me did not know what was going on as well. This is a known complaint and issue in these vehicles and a major safety issue. Audi should stand behind their quality and it is dissapointing costly repair that shouldn't be needed at 50 k (right outside of warranty). This issue can cause a detrimental accident.

**NHTSA ID Number:** 11717440
**Complaint Date:** February 11, 2026
**Incident Date:** February 6, 2026
**Summary of Complaint**
I turned on my car and several malfunctions came on the dash,and would not start and went in limp mode. A local mechanic stated it's the electrical component of the coolant pump causing malfunction. He also stated that could lead the car catching fire if overheats since the 5V is dipping below due to the faulty coolant /water pump. Ultimately forcing the car in limp mode for safety precautions. The problem is I purchase my car at 87,000 miles from the Audi dealership, and the extended warranty that covers the car is 80,000 miles

**NHTSA ID Number:** 11717605
**Complaint Date:** February 12, 2026
**Incident Date:** February 12, 2026
**Summary of Complaint**
The contact owned a 2018 Audi A4. The contact stated that while driving at an undisclosed speed, there was fluid leaking from the front of the vehicle. No warning lights were illuminated. The contact also stated that while the vehicle was parked, there was a puddle of fluid leaking from the front of the vehicle. The vehicle was taken to an independent mechanic, where it was diagnosed and it was determined that the water pump had failed and needed to be replaced. The vehicle was not repaired. The dealer was contacted. The vehicle was not diagnosed or repaired. The manufacturer was not made aware of the failure. The failure mileage was approximately 92,000.

**NHTSA ID Number:** 11720200
**Complaint Date:** February 24, 2026
**Incident Date:** August 4, 2025
**Summary of Complaint**
I discovered this item while researching another issue. There was a class action law suit against VW/Audi for the Water Pump and coolant leaking into the system. The class action covered the year and model for my Audi (2020 Q7) but my VIN was not

22

included. The class action ended in 2024. On 8/4/25, My water pump went out because of coolant going into system. A $6,000 repair. I brought the issue up with Audi. No response.

**NHTSA ID Number:** 11724096
**Complaint Date:** March 13, 2026
**Incident Date:** February 24, 2026
**Summary of Complaint**
The contact owns a 2020 Audi Q7. The contact stated that while driving at an undisclosed speed, the transmission unexpectedly downshifted while the accelerator pedal was depressed. The check engine warning light was illuminated. The vehicle was taken to a local dealer, where the water pump, coolant pump, vacuum line, and vacuum reservoir were replaced. The manufacturer was made aware of the failure. The failure mileage was approximately 70,000.

**NHTSA ID Number:** 11732057
**Complaint Date:** April 18, 2026
**Incident Date:** April 9, 2026
**Summary of Complaint**
My 2020 Audi SQ5 (3.0L turbo V6, EA839 engine) experienced premature water pump failure at 64,361 miles. Coolant leaked into the vacuum system, damaging the vacuum unit and related components. Failed parts are available for inspection. Safety Risk: Loss of coolant circulation causes rapid overheating and risk of sudden engine failure at highway speeds, creating a collision hazard. Coolant intrusion into the vacuum system can also impair brake booster function, compromising stopping ability. Confirmed by Dealer: Diagnosed and confirmed by Audi Reno Tahoe (Reno, NV) on April 9, 2026. Written estimate #XXX documents replacement of the water pump, pulley, valve, vacuum unit, hose, and tank — totaling $6,591.37 out of pocket. No recall or manufacturer assistance has been offered even though this is a known issue dating back to 2013. Warnings: On 4/9/2026, dealer reports that after a non related repair test drive the technician observed "Drive system malfunction ON during hard acceleration" as well as visible signs of coolant leakage. Prior to having the non-related service completed, I did not see any warning lights or receive a temperature warning. Known Defect — Recall Warranted: This failure is consistent with a documented defect across 2013–2022 Audi/VW 3.0T engines. A class action — XXX et al. v. Volkswagen Group of America, Case No. XXX— specifically names the 2020 SQ5. Despite known complaints, internal testing data, and dealer reports, no recall has been issued. I urge NHTSA to investigate and mandate a recall of all affected vehicles.

67.    In addition to the foregoing complaints, Defendants had knowledge of the Defect from NHTSA complaints relating to earlier models and model years of its vehicles, which also suffered from defective water pumps. Below is a small sampling of those complaints.

23

**NHTSA ID Number:** 11144967
**Incident Date** February 27, 2018
**Complaint Date** November 2, 2018
**Summary of Complaint**
VEHICLE BEGAN SHAKING, DRIVING VERY ROUGH AND CHECK ENGINE LIGHT CAME AND EPC LIGHTS CAME ON THE DASH. CAR WAS NOT DRIVABLE. THIS HAPPENED LESS THAN TWO MONTHS AFTER I HAD THE WATER PUMP REPLACED FOR LEAKAGE AND FAILURE (WHICH HAS NOW BEEN RECALLED). I BELIEVE THE TWO ARE CONNECTED, BUT AUDI CHARGED ME A TO REPLACE THE ENGINE. I FEEL THAT THE ENGINE FAILURE WAS A DIRECT LINK TO THE ISSUE WITH THE PUMP.

**NHTSA ID Number**: 11256340
**Incident Date**: August 28, 2019
**Complaint Date**:  September 18, 2019
**Summary of Complaint**:
AUDI RECALLED 2012-2015 A6 CARS WITH THE 2.0L TFSI ENGINE, ALONG WITH OTHER AUDI MODELS, DUE TO FAULTY COOLANT/WATER PUMP (NHTSA RECALL # 18V-229 MFG RECALL #19N3/19N4). FOR THE A6, THE BRACKETING WAS FOR CARS BUILT FROM 4/4/2011 - 12/22/2014. THE BRACKETING FOR OTHER MODELS IMPACTED BY THE RECALLED VARIED FROM 2012-2017. MY A6 2.0 WAS BUILT IN FEB 2015, BUT WAS CLASSIFIED AS A 2016 MODEL. ON 8/28/2019 MY CHECK ENGINE LIGHT TURNED ON. I TOOK THE CAR INTO MY AUDI DEALERSHIP FOR SERVICING. THE TECHNICIAN STATED THAT I HAD A DEFECTIVE COOLANT/WATER PUMP, AND THAT THE PUMP WAS ABOUT TO BURST AND NEEDED IMMEDIATE REPLACEMENT. I WAS AWARE OF THE RECALL, AND ASKED IF THE PUMP ON MY CAR WAS SIMILAR TO THE PUMPS COVERED UNDER THE RECALL, WHICH THEY CONFIRMED THE PUMP PART NUMBER ON MY CAR MATCHED THE PUMP PART NUMBER THAT WAS BEING RECALLED. HOWEVER, SINCE MY CAR WAS CLASSIFIED AS A 2016, IT WAS NOT COVERED UNDER THE RECALL. IT APPEARS THAT THE BRACKETING THAT WAS USED TO DETERMINE WHICH CARS SHOULD BE COVERED UNDER THE RECALL WAS NOT BROAD ENOUGH FOR THE A6 MODELS, AS IT APPEARS THAT THE DEFECTIVE PUMPS WERE ALSO USED ON SOME 2016 A6 MODELS OR CARS BUILT AFTER 12/22/2014.

**NHTSA ID Number**: 11300976
**Incident Date**:  February 25, 2019
**Complaint Date**:  January 21, 2020
**Summary of Complaint**:
ISSUE WITH POORLY ENGINEERED WATER PUMP. MY WATER PUMP WENT OUT DUE TO A SMALL PLASTIC SEAL MALFUNCTIONING AND ALLOWING COOLANT TO EXPEL FROM SYSTEM. I AM FORTUNATE I LEARNED OF THE ISSUE UPON STARTING MY CAR AND COULD IMMEDIATELY TAKE CARE OF IT, ALTHOUGH LEAVING WORK AT

9PM, LONG AFTER EVERYONE HAS LEFT AND WITH NO AUTOMOTIVE SHOPS OPEN MADE IT DIFFICULT TO TAKE CARE OF. UPON TALKING WITH AN INDEPENDENT AUDI/VW SPECIALIST AND DOING MY OWN RESEARCH I CAME TO FIND THIS WAS AN INCREDIBLY COMMON PROBLEM. MY CAR HAD ONLY 35K MILES ON IT AND WAS 1 MONTH OUT OF WARRANTY WHEN THIS OCCURRED. THE AUDI/VW SHOP SAYS THEY REPLACE 4-5 OF THESE PUMPS PER WEEK! IT CLEARLY IS A MAJOR ISSUE, ESPECIALLY SINCE A CAR CANNOT FUNCTION AND IS DANGEROUS TO OPERATE WITHOUT THE COOLING SYSTEM. I WAS VERY UPSET THAT THE AUDI BRAND WOULD ALLOW A KNOWN PROBLEM TO CONTINUE, AS IT DOES NOT SEEM LIKE A "LUCK OF THE DRAW" PART MALFUNCTION.

**NHTSA ID Number**: 11301301
**Incident Date** January 22, 2020
**Complaint Date** January 23, 2020
**Summary of Complaint**
IS AN AUDI Q5 3T AND THE WATER PUMP BROKE, LEADING TO LEAKING OF THE COOLANT AND OVERHEAT THE ENGINE, THE Q5 WITH 2T ENGINES ALREADY HAVE THE RECALL FOR WATER PUMP PROBLEMS , BUT AUDI DOES NOT WANT TO APPLY THIS RECALL FR THE 3T , THIS HAPPENED WHEN I WAS IN THE HIGHWAY AND I HAD TO POOL OVER .

**NHTSA ID Number:** 11376098
**Incident Date** November 17, 2020
**Complaint Date** November 24, 2020
**Summary of Complaint**
BAD WATER PUMP AND CROSS BAR

**NHTSA ID Number:** 11395095
**Incident Date** December 15, 2020
**Complaint Date** February 7, 2021
**Summary of Complaint**
WATER PUMP LEAKED AND HAD TO BE REPLACED AT 50,000 MILES AND 4 1/2 YEARS OLD.

**NHTSA ID Number:** 11399049
**Incident Date** December 23, 2019
**Complaint Date** March 3, 2021
**Summary of Complaint**
HI THERE I PURCHASED A USED 2017AUDI Q7 3.0T WITH ABOUT 65K MILES IN OCTOBER OF 2019 AND A COUPLE OF WEEKS LATER I NOTICED THAT THE ANTIFREEZE BOTTLE WAS ALWAYS LOW SO I HAD TO KEEP ADDING.THERE WAS NO LEAK IN THE GARAGE BUT YOU CAN CERTAINLY SMELL THE ANTIFREEZE. I CHECKED ON GOOGLE AND OTHER FORUMS AND LEARNED THERE IS A PROBLEM WITH THE WATER PUMP. SO IF OTHER PEOPLE IS HAVING THE SAME PROBLEM I THINK AUDI SHOULD LOOK INTO FIXING IT .THANK YOU

**NHTSA ID Number:** 11414535
**Incident Date** April 25, 2021
**Complaint Date** April 29, 2021
**Summary of Complaint**
THE ORIGINAL ENGINE WATER PUMP FAILED AT 18,313 MILES ON MAY 12, 2019. THE REPLACED ENGINE WATER PUMP HAS FAILED AGAIN AT 24,700 MILES ON APRIL 25. 2021. THIS IS COMPLETELY UNACCEPTABLE AND UNSAFE.

**NHTSA ID Number:** 11416039
**Incident Date** May 4, 2021
**Complaint Date** May 11, 2021
**Summary of Complaint**
WATER PUMP FAILED  WITH 47K FILES - THERE SEEM TO BE A LOT OF THESE ISSUE WITH MULTIPLE Q7 OWNERS. IT SEEMS LIKE THERE WAS A MANUFACTURING DEFECT.

**NHTSA ID Number:** 11420231
**Incident Date** June 8, 2021
**Complaint Date** June 9, 2021
**Summary of Complaint**
Premature Water Pump Failure. I took our 2017 Audi Q7 into the dealer for a 60k mi service. The vehicle has been serviced as recommended by Audi at the dealership at every interval. On this visit everything looked normal but they discovered a leak in the water pump. Quoted a $2100 repair. We are out of warranty. Talking to other Audi Q7 owners, many have had premature water pump failures. Some were covered by warranty, others not. The Water Pump is an essential component and if it fails, it could leave the driver and occupants stranded due to an overheated engine.

26

**NHTSA ID Number:** 11434309
**Incident Date** September 24, 2021
**Complaint Date** September 24, 2021
**Summary of Complaint**
I start getting coolant leak and it was at Audi dealership. Nothing was done just today get biger leak and took to shop and they say my water pump is broken. I think this is part of Audi A6 2013 water oump problems. Need to fix it

**NHTSA ID Number:** 11434763
**Incident Date** September 13, 2021
**Complaint Date** September 28, 2021
**Summary of Complaint**
Water pump failed at 42,xxx miles, well below the 50,000 mile warranty of the vehicle. Totally unacceptable for this type of luxury SUV and no support from Audi or my local dealer to cover any of the nearly $1500 charges to replace the water pump and refill / test the system with coolant. If the car wasn't in my garage at home, I could have been left stranded several hundred miles from any type of service or repairs. This is a common problem with other previous Audi SUVs and there should be an extended warranty for these repairs, something the manufacturer didn't build the car right to save a few dollars and leaving Owners to foot the high repair bills and deal with being stranded. If this would have happened while driving on the highway, my engine could have overheated and caught fire or caused a high-speed accident, possibly injuring me, my family, and others. The vehicle has been repaired by the Audi dealer but at a very high cost. There were no warning lamps, messages or other symptoms of the problem prior to the failure.

## C. **Defendants' Warranty Practices**

68.     Despite longstanding knowledge of the Defect as set forth above, Defendants refuse to provide warranty coverage for the repairs when the Defect manifests.

69.     Defendants provided a 4-year/50,000-mile New Vehicle Limited Warranty for the Class Vehicles.

70.     Nevertheless, when Class members seek warranty coverage for the Defect, even within the warranty period, Defendants often fail to respond or deny warranty coverage.

71.     Moreover, some Class Vehicles manifest the Defect just outside Defendants' warranty period. But the mileage and temporal limitations Defendants impose on their warranty are unconscionable and unenforceable.

72.     Defendants provide this New Vehicle Limited Warranty to buyers after a purchase is complete. Buyers like Plaintiffs and Class members lack pre-sale knowledge of the Defect or the ability to bargain as to the terms of the Defendants' warranty.  Accordingly, the limitations Defendants impose on the Limited Warranty—and their efforts to disclaim any implied warranties—are procedurally unconscionable because there was unequal bargaining power between Defendants and Plaintiffs and the other Class members, as, at the time of purchase, Plaintiffs and the other Class members had no other options for purchasing from Defendants alternative warranty coverage for Class Vehicles.

73.     All of the purported limitations on the warranty, including the time and mileage limits, are also substantively unconscionable. Defendants knew Class Vehicles suffered from the Defect and that the Defect would continue to pose safety risks after the warranty purportedly expired, yet failed to disclose the Defect to Plaintiffs and the other Class members while continuing to market Class Vehicles as safe and reliable.  Defendants' enforcement of those limitations is thus harsh and shocks the conscience.

74.     Defendants' efforts to evade their warranty obligations with respect to the known Defect, coupled with their refusal to cover the Defect if it manifests outside the warranty's stated term, deprives Plaintiffs and Class members of the benefit of their bargain, forcing them to pay out of pocket to repair a defect present in Class Vehicles at the time of purchase.

## CLASS ACTION ALLEGATIONS

75.     Plaintiffs bring this action on behalf of themselves, and on behalf of the following class pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the proposed nationwide class is defined as follows:

**Nationwide Class:**
All persons in the United States who bought or leased a Class Vehicle.

76.     In the alternative to the Nationwide Class, and pursuant to Fed. R. Civ. P. 23(c)(5), Plaintiffs seek to represent the following state subclasses ("State Classes"):

**California Class:**
All persons who bought or leased a Class Vehicle in the state of California for primarily personal, family or household purposes.

**New Jersey Class:**
All persons who bought or leased a Class Vehicle in the state of New Jersey.

77.     Together, the Nationwide Class and the State Classes shall be collectively referred to herein as the "Class."

78.     Excluded from the Class and State Classes are Defendants, their affiliates, employees, officers and directors, persons or entities that purchased the Class Vehicles for resale, and the Judge(s) assigned to this case. Plaintiffs reserve the right to modify, change, or expand the Class definitions after conducting discovery.

79.     Numerosity: Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Defendant and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe that tens of thousands of Class Vehicles have been sold and leased throughout the United States, including thousands within each of the state Subclasses.

80.     Existence and Predominance of Common Questions of Fact and Law: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

    a.   whether the Class Vehicles suffer from the Defect;

    b.   whether Defendants knowingly failed to disclose the existence and cause of the

29

Water Pump Defect;

c.  when Defendants first learned of the Water Pump Defect;

d.  whether Defendants' conduct constitutes a violation of the state consumer protection statutes asserted herein;

e.  whether Defendants' conduct violates the Magnuson-Moss Warranty Act;

f.  whether Defendants' conduct constitutes a breach of express warranty;

g.  whether Defendants' conduct constitutes a breach of implied warranty;

h.  whether Defendants' conduct constitutes common law fraud;

i.  whether Defendants' conduct constitutes unjust enrichment; and

j.  whether Plaintiffs and Class members are entitled to monetary damages and/or other remedies and, if so, the nature of any such relief.

81.  Typicality: All of Plaintiffs' claims are typical of the claims of the Class since Plaintiffs and each member of the Class purchased or leased a Class Vehicle with the Water Pump Defect. Furthermore, Plaintiffs and all members of the Class sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendant's wrongful conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class members.

82.  Adequacy: Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Class that they seek to represent, they have retained counsel that are competent and highly experienced in complex class action litigation, and they intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

83.  Superiority: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of

individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for members of the Class to individually and effectively redress the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation also increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Class can be readily identified and notified based on, *inter alia*, Defendants' vehicle identification numbers (VINs), warranty claims, registration records, and the database of complaints.

84.    Injunctive Relief: Pursuant to Fed. R. Civ. P. 23(b)(2), Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief, corresponding declaratory relief, or final equitable relief with respect to the class as a whole.

**FIRST CAUSE OF ACTION**
**VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT ("CLRA")**
**(Cal. Civ. Code § 1750, *et seq.*)**
**(On Behalf of the California Class)**

85.    Plaintiff Doug Larr and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

86.    Plaintiff Larr brings this claim on behalf of himself and on behalf of the California Class against Defendants.

87.    Defendants are persons as that term is defined in California Civil Code § 1761(c).

88.    Plaintiff Larr and the California Class Members are "consumers" as that term is

31

defined in California Civil Code §1761(d).

89.     Defendants engaged in unfair and deceptive acts in violation of the CLRA by the practices described above, and by knowingly and intentionally concealing from Plaintiff Larr and California Class Members that the Class Vehicles suffer from a defect(s) (and the costs, risks, and diminished value of the vehicles as a result of this problem). These acts and practices violate, at a minimum, the following sections of the CLRA:

> (a)(2) Misrepresenting the source, sponsorship, approval or certification of goods or services;
>
> (a)(5) Representing that goods or services have sponsorships, characteristics, uses, benefits or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation or connection which he or she does not have;
>
> (a)(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and
>
> (a)(9) Advertising goods and services with the intent not to sell them as advertised.

90.     Defendants' unfair or deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

91.     Defendants knew that the Class Vehicles were defectively manufactured, would fail prematurely, and were not suitable for their intended use.

92.     Defendants were under a duty to Plaintiff Larr and the California Class Members to disclose the defective nature of the Class Vehicles because:

> a.  Defendants were in a superior position to know the true state of facts about the safety defect and associated repair costs in the Class Vehicles;
>
> b.  Plaintiff Larr and the California Class Members could not reasonably have been expected to learn or discover that the Class Vehicles had a dangerous safety defect until manifestation of the Defect;

32

c. Defendants knew that Plaintiff Larr and the California Class Members could not reasonably have been expected to learn or discover the safety and security defect and the associated repair costs that it causes until the manifestation of the Defect; and

d. Defendants actively concealed the safety and security defect and the associated repair costs by asserting to Plaintiff Larr and the California Class Members that their vehicles were not defective.

93. In failing to disclose the Defect and the associated safety risks and repair costs that result from it, Defendants have knowingly and intentionally concealed material facts and breached their duty to disclose.

94. The facts concealed or not disclosed by Defendants to Plaintiff Larr and the California Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Defendants' Class Vehicles or pay a lesser price. Had Plaintiff Larr and the California Class known about the defective nature of the Class Vehicles, they would not have purchased or leased the Class Vehicles or would have paid less for them.

95. On or about May 14, 2026, Plaintiff Larr provided Defendants with notice of their violations of the CLRA pursuant to California Civil Code § 1782(a) and he seeks only injunctive relief at this time. Once the 30-day period elapses, Plaintiff Larr will amend this complaint to seek monetary relief.

96. Plaintiff Larr's and the other California Class Members' injuries were proximately caused by Defendants' fraudulent and deceptive business practices.

**SECOND CAUSE OF ACTION**
**VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW**
**(Cal. Bus. & Prof. Code § 17200)**
**(On Behalf of the California Class)**

97. Plaintiff Larr and the California Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

98. Plaintiff Larr brings this claim on behalf of himself and on behalf of the California

Class against Defendants.

99. The California Unfair Competition Law ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

100. Defendants have engaged in unfair competition and unfair, unlawful or fraudulent business practices by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiff Larr and the California Class Members that the Class Vehicles suffer from the Defect (and the costs, safety risks, and diminished value of the vehicles as a result of these problems). Defendants should have disclosed this information because they were in a superior position to know the true facts related to the Defect, and Plaintiff Larr and California Class Members could not reasonably be expected to learn or discover the true facts related to the Defect.

101. The defective Water Pumps constitute a safety issue that triggered Defendants' duty to disclose the safety issue to consumers.

102. These acts and practices have deceived Plaintiff Larr and are likely to deceive the public. In failing to disclose the Defect and suppressing other material facts from Plaintiff Larr and California Class Members, Defendants breached their duties to disclose these facts, violated the UCL, and caused injuries to Plaintiff Larr and California Class Members. The omissions and acts of concealment by Defendants pertained to information that was material to Plaintiff Larr and California Class Members, as it would have been to all reasonable consumers.

103. The injuries suffered by Plaintiff Larr and California Class Members are not greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiff Larr and California Class Members should have reasonably avoided.

104.    Defendants' acts and practices are unlawful because they violate California Civil Code §§ 1668, 1709, 1710, and 1750 *et seq.*, and California Commercial Code § 2313.

105.    Plaintiff Larr seeks to enjoin further unlawful, unfair and/or fraudulent acts or practices by Defendants, to obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under California Business & Professions Code § 17200.

**THIRD CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW**
**(Cal. Bus. & Prof. Code § 17500, et seq.)**
**(On Behalf of the California Class)**

106.    Plaintiff Larr and the California Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

107.    Plaintiff Larr brings this claim on behalf of himself and on behalf of the California Class against Defendants.

108.    California Business & Professions Code § 17500 states:

It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

109.    Defendants caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendants, to be untrue and misleading to consumers, including Plaintiff Larr and the California Class Members.

110.    Defendants have violated § 17500 because the misrepresentations and omissions regarding the safety, reliability, and functionality of their Class Vehicles as set forth in this Complaint were material and likely to deceive a reasonable consumer.

111.    Plaintiff Larr and the other California Class Members have suffered an injury in fact, including the loss of money or property, as a result of Defendants' unfair, unlawful, and/or deceptive practices. In purchasing or leasing their Class Vehicles, Plaintiff Larr and the other California Class Members relied on Defendants' misrepresentations and/or omissions with respect to the safety and reliability of the Class Vehicles. Defendants' representations were untrue because the Class Vehicles are distributed with defective Water Pumps that can cause catastrophic engine failure. Had Plaintiff Larr and the other California Class Members known this, they would not have purchased or leased their Class Vehicles and/or paid as much for them. Accordingly, Plaintiff Larr and the other California Class Members overpaid for their Class Vehicles and did not receive the benefit of their bargain.

112.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' businesses. Defendants' wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the state of California and nationwide.

113.    Plaintiff Larr, individually and on behalf of the other California Class Members, request that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiff Larr and the other California Class Members any money Defendants acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT -**
**BREACH OF IMPLIED WARRANTY**
**(Cal. Civ. Code §§ 1791 & 1792)**
**(On Behalf of the California Class)**

114.    Plaintiff Larr and the California Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

115.    Plaintiff Larr brings this claim on behalf of himself and on behalf of the California Class against Defendants.

116.    Plaintiff Larr and the other California Class members who purchased or leased the Class Vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

117.    The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

118.    Defendants are "manufacturers" of the Class Vehicles within the meaning of Cal. Civ. Code § 1791(j).

119.    Defendants impliedly warranted to Plaintiff Larr and the other California Class Members that the Class Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1 & 1792.

120.    However, the Class Vehicles do not have the quality that a reasonable purchaser would expect.

121.    Cal. Civ. Code § 1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following: "(1) pass without objection in the trade under the contract description; (2) are fit for the ordinary purposes for which such goods are used; … and (4) conform to the promises or affirmations of fact made on the container or label."

37

122. The Class Vehicles would not pass without objection in the trade because of the Defect.

123. The Class Vehicles are not fit for the ordinary purpose for which they are used because of the Defect.

124. The Class Vehicles do not conform to the promises or affirmations of fact made by Defendants.

125. Defendants breached the implied warranty of merchantability by manufacturing and selling Class Vehicles containing the Defect. The existence of the Defect has caused Plaintiff Larr and the other California Class members to not receive the benefit of their bargain and have caused Class Vehicles to depreciate in value.

126. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff Larr and the other California Class members received goods whose defective condition substantially impairs their value to Plaintiff Larr and the other California Class members. Plaintiff Larr and the other California Class members have been damaged as a result of the diminished value of the Class Vehicles.

127. Plaintiff Larr and the other California Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Class Vehicles, or the overpayment or diminution in value of their Class Vehicles.

128. Pursuant to Cal. Civ. Code § 1794, Plaintiff Larr and the other California Class members are entitled to costs and attorneys' fees.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT, ("NJCFA")**
**N.J. Stat. Ann. § 56:8-1, *et seq*.**
**(On Behalf of the New Jersey Class)**

129. Plaintiff Crawford and the New Jersey Class incorporate by reference each

preceding and succeeding paragraph as though fully set forth at length herein.

130.    Plaintiff Crawford brings this claim on behalf of himself and on behalf of the New Jersey Class against Defendants.

131.    The New Jersey Consumer Fraud Act ("NJCFA") prohibits "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise…." N.J. Stat. Ann. § 56:8-2.

132.    Defendants engaged in unfair and deceptive practices that violated the NJCFA as described above.

133.    Defendants are engaged in the "sale" of "merchandise" within the meaning of N.J. Stat. Ann. § 56:8-1(c).

134.    Defendants' advertisements described herein are "advertisements" within the meaning of N.J. Stat. Ann. § 56:8-1(a).

135.    Defendants employed unconscionable commercial practices in their advertisement and sale of the Class Vehicles, which are defective. Defendants' practices in connection with the advertisement and sale of the Class Vehicles were unscrupulous and demonstrate a lack of honesty and fair dealing.

136.    Defendants engaged in fraudulent and deceptive trade practices, in violation of the NJCFA, by misrepresenting and knowingly concealing the existence of the Defect. Such information was material to a reasonable consumer because, among other things, the Defect causes the water pump to fail and causes engine damage, diminishes the value of Class Vehicles, and represents an unreasonable safety risk to consumers.

137.    Defendants' material misrepresentations and knowing omissions are highly likely to mislead the public and induce consumers to make misinformed purchases.

138.    Defendants owed a duty to disclose material facts about the defective nature of the Class Vehicles because: (1) Defendants had exclusive or superior knowledge of the Defect in the Class Vehicles; (2) Defendants knew that Plaintiff Crawford and the New Jersey Class members were unaware of the Defect in the Class Vehicles; (3) Defendants understood the true facts regarding the Defect in the Class Vehicles, including that they are defective and prone to water pump failure and coolant migration, would be important to reasonable prospective buyers of the Class Vehicles; and (4) Defendants made representations regarding the quality and functionality of the Class Vehicles that were misleading, deceptive, and incomplete without the disclosure of the true facts regarding the Defect in the Class Vehicles.

139.    The misrepresentations and knowing material omissions described above were uniform across the New Jersey Class. All of the advertising, promotional materials, and manuals contained the same material misrepresentations and knowing omissions.

140.    The misrepresentations and knowing material omissions were intended to induce Plaintiff Crawford and the New Jersey Class members to purchase Class Vehicles. Plaintiff Crawford and the New Jersey Class members would not have purchased a Class Vehicle, or would have paid less for them, in the absence of Defendants' misrepresentations and knowing material omissions.

141.    Plaintiff Crawford and the New Jersey Class members suffered ascertainable loss as a direct and proximate result of Defendants' unconscionable and deceptive acts and practices. Among other injuries, Plaintiff Crawford and the New Jersey Class members overpaid for their Class Vehicles, and their Class Vehicles suffered a diminution in value.

40

142.    As permitted under N.J. Stat. Ann. § 56:8-19, Plaintiff Crawford and the New Jersey Class members seek treble damages, appropriate injunctive relief, and reasonable attorneys' fees and costs.

## SIXTH CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY
### (On Behalf of the Nationwide Class Or, Alternatively, the State Classes)

143.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

144.    Plaintiffs bring this cause of action on behalf of themselves and the Class against all Defendants, or in the alternative Plaintiff Larr brings this cause of action on behalf of himself and the California Class and Plaintiff Crawford brings this cause of action on behalf of himself and the New Jersey Class.

145.    Defendants provided Plaintiffs and Class members with the express warranty set forth above.

146.    Specifically, Defendants warranted that the Class Vehicles were free from defects in materials or workmanship; and that in the event the Class Vehicles suffered from defects in either of these respects, Defendants would correct such defects at no cost to Plaintiffs or Class members.

147.    The Class Vehicles were not free from defects in materials or workmanship because they suffer from the Water Pump Defect.

148.    Defendants have refused, and continue to refuse, to comply with the terms of their warranty to correct the Defect outlined above.

149.    Plaintiffs have complied with their obligations under the express warranty at all times relevant herein.

150.    As a result of Defendants' breach of express warranty, Plaintiffs and Class members have suffered damages.

## SEVENTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY
### (On Behalf of the Nationwide Class Or, Alternatively, the State Classes)

151.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

152.    Plaintiffs bring this cause of action on behalf of themselves and the Class against all Defendants, or in the alternative Plaintiff Larr brings this cause of action on behalf of himself and the California Class and Plaintiff Crawford brings this cause of action on behalf of himself and the New Jersey Class.

153.    Defendants were at all relevant times the manufacturers, distributors, warrantors, and/or sellers of the Class Vehicles. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased.

154.    Defendants provided Plaintiff and the other Class members with an implied warranty that the Class Vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles suffer from the Water Pump Defect, which causes the vehicles to experience premature and catastrophic engine failure. Therefore, the Class Vehicles are not fit for their particular purpose of providing safe and reliable transportation.

155.    Defendants impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their engines were manufactured, supplied, distributed, and/or sold by Defendants were safe and reliable for providing transportation and would not experience

42

premature and catastrophic engine failure; and (ii) a warranty that the Class Vehicles and their engines would be fit for their intended use while the Class Vehicles were being operated.

156.    Contrary to the applicable implied warranties, the Class Vehicles and their engines at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and the other Class members with reliable, durable, and safe transportation. Instead, the Class Vehicles suffer from manufacturing defect(s).

157.    Defendants' actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

**EIGHTH CAUSE OF ACTION**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**
**(15 U.S.C. § 2301, *et seq.*)**
**(On Behalf of the Nationwide Class Or, Alternatively, the State Classes)**

158.    Plaintiff and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

159.    Plaintiffs bring this cause of action on behalf of themselves and the Class against all Defendants, or in the alternative Plaintiff Larr brings this cause of action on behalf of himself and the California Class and Plaintiff Crawford brings this cause of action on behalf of himself and the New Jersey Class.

160.    Plaintiffs and the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

161.    Defendants are suppliers and warrantors within the meaning of 15 U.S.C. §§ 2301(4)-(5).

162.    The Class Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

163.    The warranties described above are "written warranties" within the meaning of 15

U.S.C. § 2301(6).

164. Defendants breached the express warranties by:

    a. Providing warranties with the purchase or lease of the Class Vehicles, thereby warranting to repair or replace any part defective in material or workmanship at no cost to the owner or lessee;

    b. Selling and leasing Class Vehicles that were defective in materials and/or workmanship, requiring repair or replacement; and

    c. Refusing and/or failing to honor the express warranties by repairing or replacing, free of charge, the component parts in order to remedy the Water Pump Defect.

165. Plaintiffs and the other Class Members relied on the existence and length of the express warranties in deciding whether to purchase or lease the Class Vehicles.

166. Defendants' breach of the express warranties has deprived Plaintiff and the other Class Members of the benefit of their bargain.

167. The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum or value of $25.00. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

168. Defendants have been afforded a reasonable opportunity to cure their breach of the written warranties and/or Plaintiffs and the other Class members were not required to do so because affording Defendants a reasonable opportunity to cure their breach of written warranties would have been futile. Defendants were also on notice of the alleged Defect from the complaints and service requests it received from Class members, as well as from their own warranty claims, customer complaint data, and/or parts sales data.

169. As a direct and proximate cause of Defendants' breach of the written warranties, Plaintiffs and the other Class members sustained damages and other losses in an amount to be

determined at trial. Defendants' conduct damaged Plaintiffs and the other Class members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, including statutory attorney fees and/or other relief as deemed appropriate.

## NINTH CAUSE OF ACTION
### COMMON LAW FRAUD
**(On Behalf of the Nationwide Class Or, Alternatively, the State Classes)**

170.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

171.    Plaintiffs bring this cause of action on behalf of themselves and the Class against all Defendants, or in the alternative Plaintiff Larr brings this cause of action on behalf of himself and the California Class and Plaintiff Crawford brings this cause of action on behalf of himself and the New Jersey Class.

172.    Defendants made material omissions concerning a presently existing or past fact. For example, Defendants did not fully and truthfully disclose to their customers the true nature of the Water Pump Defect, which was not readily discoverable until years later, often after warranty period expired. As a result, Plaintiffs and the other Class members were fraudulently induced to lease and/or purchase the Class Vehicles with the said Defect and all of the resultant problems.

173.    These omissions were made by Defendants with knowledge of their falsity, and with the intent that Plaintiffs and the Class members rely on them.

174.    Plaintiffs and the Class members reasonably relied on these omissions and suffered damages as a result.

## TENTH CAUSE OF ACTION
### UNJUST ENRICHMENT
**(On Behalf of the Nationwide Class Or, Alternatively, the State Classes)**

175.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

45

176.     Plaintiffs bring this cause of action on behalf of themselves and the Class against all Defendants, or in the alternative Plaintiff Larr brings this cause of action on behalf of himself and the California Class and Plaintiff Crawford brings this cause of action on behalf of himself and the New Jersey Class.

177.     Plaintiffs bring this claim in the alternative to their contract-based claims.

178.     Plaintiffs and members of the Class conferred a benefit on Defendants. Although Plaintiffs purchased Class Vehicles from Defendants' authorized dealerships, the money Plaintiffs used to purchase the Class Vehicles flowed from Defendants' authorized dealership to Defendants.

179.     Defendants had knowledge that this benefit was conferred upon them.

180.     Defendants have been and continue to be unjustly enriched at the expense of Plaintiffs, and their retention of this benefit under the circumstances would be inequitable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that this Court:

A.      determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B.      appoint Plaintiffs as the representatives of the Class and their counsel as Class counsel;

C.      award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs and Class members are entitled;

D.      award pre-judgment and post-judgment interest on such monetary relief;

E.      grant appropriate injunctive and/or declaratory relief, including, without limitation,

an order that requires Defendants to repair, recall, and/or replace the Class Vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of the defect; and to correct their advertising and marketing practices as described herein;

F.      award reasonable attorney's fees and costs; and

G.      grant such further relief that this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Dated: May 18, 2026

Respectfully submitted,

*/s/ Matthew D. Schelkopf*
Matthew D. Schelkopf
Joseph B. Kenney
**SAUDER SCHELKOPF LLC**
1109 Lancaster Avenue
Berwyn, PA 19312
Tel: (610) 200-0581
Facsimile: (610) 421-1326
mds@sstriallawyers.com
jbk@sstriallawyers.com

*Attorneys for Plaintiffs and the Putative Class*